## 56584. SOUTHWIRE COMPANY v. DEPARTMENT OF TRANSPORTATION et al.

WEBB, Judge.

DOT condemned 3.060 acres of a 55-acre tract located in Carroll County owned by Southwire upon which it operates a copper refinery. Before the condemnation by DOT, the 55-acre tract had a common boundary to the north with property owned by Roy Richards, Southwire's president and chairman of the board. After the condemnation there was no common boundary. Another tract of land owned by Southwire on which it operated a wire and cable mill was separated by the property owned

by Roy Richards and a railroad right-of-way. The condemned land was to be used as a part of a limited access bypass around Carrollton.

DOT deposited $46,610 in the court and Southwire filed a notice of appeal for a jury trial on the ground that this amount did not provide just and adequate compensation. Two expert witnesses testified for DOT that the value of the condemned land was (1) $46,610, or (2) $48,115. Both of these appraisals included $32,715 for the relocation of power lines. Southwire presented the opinions of three witnesses as to damages incurred by the taking. The first, an independent fee appraiser testified that the 3.060 acres taken had a total value of $15,000 and that consequential damages to the remainder of the tract were $26,000 at a per acre value of $500. He valued a temporary construction easement at $100, with a total appraisal of $73,815, which also included the figure of $32,715 for power line relocation used by DOT's appraisers. Southwire's second witness was its president and board chairman who stated that in his opinion consequential damages amounted to $10,000 an acre. Frank Hollady, vice president of engineering for Southwire, then testified that in his opinion consequential damages were $10,000 to $14,000 an acre. Although neither Richards nor Hollady gave a total amount of compensation, in closing argument Southwire's counsel insisted that the evidence authorized an award of $636,461.

The jury awarded Southwire $48,115 and it appeals, enumerating 17 errors involving evidence excluded from the jury and failures to charge. We affirm.

1. The trial court correctly sustained DOT's objections to any evidence being admitted as to Southwire's right to cross over to the property of Roy Richards, or to its inability to expand its business over the adjoining property because of the taking. The loss of access for which Southwire sought to establish consequential damages was between two separately owned tracts of land. " 'It is an established rule in law, in proceedings for condemnation of land, that the just compensation which the landowner is entitled to receive for his lands and damages thereto must be limited to the

tract a portion of which is actually taken. The propriety of this rule is quite apparent. It is solely by virtue of his ownership of the tract invaded that the owner is entitled to incidental damages. His ownership of other lands is without legal significance.' " *Gaines v. City of Calhoun,* 42 Ga. App. 89, 95 (155 SE 214) (1930); *Ga. Power Co. v. Bray,* 232 Ga. 558, 560 (207 SE2d 442) (1974).

Thus, though "Consequential damages to a contiguous tract of land having a different ownership from that in which the taking occurs may be real and may in fact exist, . . . a separate owner's claim for consequential damages to his land contiguous to the tract where the taking occurs cannot be asserted in a condemnation action. Consequential damages to 'the remainder of the tract in which the taking occurs' are the only consequential damages that may be recovered in the condemnation action." *Ga. Power Co. v. Bray,* 232 Ga. 558, 560, supra.

In the instant case, while Southwire is not attempting to recover consequential damages to a contiguous tract having a different ownership, it is seeking to increase consequential damages to the condemned tract by showing loss of permissive access to the Richards property. Permissive access to the separately owned lands of another was dealt with by this court in *State Hwy. Dept. v. Howard,* 119 Ga. App. 298, 304 (7, 8) (167 SE2d 177) (1969) and *State Hwy. Dept. v. Kinsey,* 131 Ga. App. 770, 772 (3) (206 SE2d 835) (1974), where DOT (then State Highway Department) was not allowed to introduce evidence of the permissive use of the land of another in attempts to lessen consequential damages. It follows that it is no more correct to allow the condemnee to increase its damages by the same means. The cases relied upon by Southwire do not mitigate otherwise since in those decisions the evidence allowed to increase consequential damages went only to the condemned property.

2. Southwire also sought to introduce evidence on the issue of consequential and direct damages for expenses incurred in providing another access road between its refinery and the wire and cable mill, which was not allowed. The access road is located primarily on a

railroad right-of-way, although a portion traverses the Roy Richards property.

Southwire makes much of the fact that its use of the access road is subject to unilateral termination by the railroad on 60 days notice. However, its use of the railroad right-of-way was subject to unilateral termination regardless of whether or not the condemnation and resulting highway construction took place. Moreover, additional space was provided under the highway bridges for a future road as well as for the present location of power lines and utilities, and Southwire has neither built a new road nor expended the sum it contends it will incur. If the railroad does terminate the right-of-way, Southwire's alternative to gain access to the Roy Richards property and beyond to the wire and cable mill is to go under the bridge, but, as discussed in Division 1, the trial court correctly ruled that it could not attempt to claim consequential damages by showing an increased cost for access to separately owned land in this condemnation proceeding.

3. (a) Nor did the trial court improperly limit cross examination of DOT's witnesses on the issue of consequential damages resulting from restrictions on access. Their previous testimony as to access and representations made to them by DOT was directed only to the railroad right-of-way and the area under the bridge where the power lines and other utilities were to be relocated, whereas Southwire sought to question them on access to the property of Roy Richards. " 'The right of cross examination is not abridged where cross examination of a witness as to irrelevant matters is not permitted.' [Cit.] 'The trial court has a discretion to control the right of cross examination within reasonable grounds, and the exercise of this discretion will not be controlled unless abused.' [Cit.]" *Dept. of Transp. v. English,* 135 Ga. App. 425 (1) (218 SE2d 134) (1975); see also *Weaver v. Ga. Power Co.,* 134 Ga. App. 696 (2) (215 SE2d 503) (1975). Since the loss of access to Roy Richards' property was not compensable nor admissible on the issue of consequential damages, no reversible error appears from these rulings.

(b) Cross examination of Southwire's witness Hollady by DOT did not "open up" the issue of a new access

road as contended by Southwire. Hollady's direct testimony was admitted over DOT's objection for the purpose of showing future expenses of protecting the utilities located under the highway bridge. Cross examination was limited to those expenses and did not encompass the cost of a new access road.

4. Exclusion of evidence relating to loss of physical security and added expense of security was likewise not erroneous. Although Southwire attempts on appeal to relate the security issue to market value and consequential damages, the testimony which Southwire complains was limited by the trial court went only to security while the highway bypass was under construction.

"Damages caused by mere temporary inconvenience due to the construction of the project for which the property was taken is not a proper element for consideration in determining just and adequate compensation for condemned realty. [Cits.]" *Dept. of Transp. v. Dent,* 142 Ga. App. 94 (1) (235 SE2d 610) (1977). If compensable damage to the property is occasioned by the construction process, the remedy is a separate suit for damages. *MARTA v. Datry,* 235 Ga. 568, 580 (III) (220 SE2d 905) (1975).

"Furthermore, in the absence of a showing of a special or unique value to the owner, mere business losses caused by a partial taking of the land on which the business is located are not a separate element for compensation. Evidence of such losses may be submitted to the jury only to help establish the market value of the property taken. [Cits.]" *Dept. of Transp. v. Dent,* 142 Ga. App. 94 (3), supra. Southwire's bare assertion that the remaining refinery property is unique falls far short of the requirements that a condemnee offer proof that the condemned property has such a unique relationship to the remainder that the value could not be passed on to a third party, nor would it be reflected in market value. *City of Gainesville v. Chambers,* 118 Ga. App. 25, 27 (2) (162 SE2d 460) (1968).

5. The remaining enumerations deal with the trial court's refusal to give certain requests to charge involving Southwire's right to recover as a separate item of damage

expenses which it alleged it would incur as a result of the condemnation. For the reasons previously discussed herein, these charges were not adjusted to the evidence and were incorrect statements of the law. We find no grounds for reversal for any reason assigned.

*Judgment affirmed. Quillian, P. J., and McMurray, J., concur.*

ARGUED SEPTEMBER 7, 1978 — DECIDED OCTOBER 2, 1978 — REHEARING DENIED OCTOBER 18, 1978 — 

*Gambrell, Russell & Forbes, David A. Handley, Jonathan H. Waller, James C. Huckaby, Jr.,* for appellant.

*Arthur K. Bolton, Attorney General, Michael F. Swick, Staff Assistant Attorney General, Don A. Langham, First Assistant Attorney General, Marion O. Gordon, Senior Assistant Attorney General, Wiggins & Camp, William J. Wiggins, G. Lee Garrett, Jr., William D. Mallard, Jr., Assistant U. S. Attorney,* for appellees.